**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

APPROXIMATELY 12,083,379.32 USDT;

Defendants *in rem*

Civil Action No. 26-cv-02544-LLA

**AWKO CLAIMANTS' ANSWER TO**
**VERIFIED COMPLAINT FOR FORFEITURE IN REM**

COME NOW the Claimants identified in Schedule A to their Verified Claims ("AWKO Claimants") (ECF No. 11), by and through the undersigned counsel, and hereby answer the Verified Complaint for Forfeiture *in rem* filed by Plaintiff, the United States of America (ECF No. 1) (the "Complaint"), as follows:

## I. PRELIMINARY STATEMENT

The AWKO Claimants are victims of the same offenses, and on information and belief their stolen cryptocurrency was laundered through the same network of wallets. Accordingly, the AWKO Claimants have previously and timely filed Verified Claims under Supplemental Rule G(5)(a) (ECF No. 11), each asserting a legal and equitable ownership interest in a portion of the defendant property in rem (the "Defendant Property," as the United States defines it in the Complaint filed on July 21, 2026), which is described as follows:

- Approximately 12,083,379.32 USDT associated with the seven virtual currency addresses identified in paragraph 15 of the Complaint.

The AWKO Claimants are identified by Schedule A number and initials, consistent with their motion to proceed under pseudonyms (ECF No. 14). Each AWKO Claimant asserts only his or her

own interest, and each response below is made by each AWKO Claimant individually. Under Supplemental Rule G(5)(b), the AWKO Claimants answer the Complaint as follows:

## II. RESPONSES TO ALLEGATIONS OF THE COMPLAINT

### STATEMENT OF THE CASE

1. AWKO Claimants admit that criminals stole funds from multiple victims, including AWKO Claimants, through cryptocurrency investment fraud schemes, and that the stolen funds were moved through a series of virtual currency addresses to conceal their origin and frustrate recovery. AWKO Claimants state that a portion of the Defendant Property consists of, or is traceable to, cryptocurrency stolen from them, in which they hold legal and equitable ownership interests that are not subject to forfeiture. AWKO Claimants are without information or knowledge sufficient to form a belief as to the location of the perpetrators or the United States Secret Service's investigative and tracing methods; however, to the extent a further response is required, AWKO Claimants deny the remaining allegations in this paragraph.

2. AWKO Claimants admit that the Complaint states that a purpose of this action is to recover assets that may be used to compensate victims, and state that they are such victims. The remainder of this paragraph states the Government's purposes and legal assertions, to which no response is required; to the extent a response is required, AWKO Claimants deny that any portion of the Defendant Property traceable to cryptocurrency stolen from them may be forfeited as against their interests.

### JURISDICTION AND VENUE

3. AWKO Claimants decline to admit or deny this paragraph as it makes a legal assertion, and the law speaks for itself.

4. AWKO Claimants decline to admit or deny this paragraph as it makes a legal assertion, and the law speaks for itself.

5. AWKO Claimants decline to admit or deny this paragraph as it makes a legal

assertion, and the law speaks for itself.

## NATURE OF THE ACTION AND STATUTORY BASIS FOR FORFEITURE

6. AWKO Claimants admit that the United States brings this action seeking forfeiture of the Defendant Property on the grounds stated in this paragraph. AWKO Claimants deny that the portions of the Defendant Property traceable to cryptocurrency stolen from them are subject to forfeiture and deny the remaining allegations in this paragraph.

7. AWKO Claimants decline to admit or deny this paragraph as it makes a legal assertion, and the law speaks for itself.

8. AWKO Claimants decline to admit or deny this paragraph as it makes a legal assertion, and the law speaks for itself.

9. AWKO Claimants decline to admit or deny this paragraph as it makes a legal assertion, and the law speaks for itself.

10. AWKO Claimants decline to admit or deny this paragraph as it makes a legal assertion, and the law speaks for itself.

11. AWKO Claimants decline to admit or deny this paragraph as it makes a legal assertion, and the law speaks for itself.

12. AWKO Claimants decline to admit or deny this paragraph as it makes a legal assertion, and the law speaks for itself.

13. AWKO Claimants decline to admit or deny this paragraph as it makes a legal assertion, and the law speaks for itself.

14. AWKO Claimants decline to admit or deny this paragraph as it makes a legal assertion, and the law speaks for itself.

## PROPERTY INFORMATION

15. AWKO Claimants admit that the Complaint defines the "Defendant Property" as 12,083,379.32 USDT associated with the seven virtual currency addresses identified in

subparagraphs (a) through (g) of this paragraph (collectively, the "Subject Virtual Currency Addresses," and each, by number, "Address-1" through "Address-7"), and that the Complaint alleges that those addresses held approximately 2,808,765.354943 USDT (Subject Virtual Currency Address-1), 52,671.627943 USDT (Subject Virtual Currency Address-2), 249,799.171451 USDT (Subject Virtual Currency Address-3), 490,000.029124 USDT ( Subject Virtual Currency Address-4), 2,000,000.02 USDT ( Subject Virtual Currency Address-5), 2,000,000.02562 USDT ( Subject Virtual Currency Address-6), and 4,500,000.0251 USDT (Subject Virtual Currency Address-7), each valued by the Government at approximately one U.S. dollar per USDT. AWKO Claimants state that the Complaint is internally inconsistent as to the amount of the Defendant Property: the amounts alleged in subparagraphs (a) through (g) total approximately 12,101,236.25 USDT, not the 12,083,379.32 USDT alleged in the first sentence of this paragraph. AWKO Claimants are without information or knowledge sufficient to form a belief as to the precise quantity of USDT held at each Subject Virtual Currency Address or its equivalent value in U.S. dollars; however, to the extent a response is required, AWKO Claimants deny those allegations.

16. Admit.

17. AWKO Claimants admit, on information and belief, that the United States has not yet taken custody and control over the Defendant Property, and that the Defendant Property is held by, and was voluntarily frozen by, Tether. AWKO Claimants further state that portions of the Defendant Property are traceable to cryptocurrency stolen from them, in which they hold legal and equitable ownership interests. AWKO Claimants are without information or knowledge sufficient to form a belief as to the remaining allegations in this paragraph, including the circumstances and terms of Tether's freeze; however, to the extent a further response is required, AWKO Claimants deny those allegations.

## DEFINITIONS

18. Admit.

19. Admit.

20. AWKO Claimants admit that transactions on a blockchain can be traced to determine which virtual currency addresses send and receive particular virtual currency, and further state that this analysis is not limited to law enforcement: private blockchain investigators use the same public blockchain data and commercially available tools. AWKO Claimants are without information or knowledge sufficient to form a belief as to the reliability of the particular tools and methods used in this investigation or the truth of the remaining allegations in this paragraph; however, to the extent a further response is required, AWKO Claimants deny those allegations.

21. Admit.

22. Admit.

23. Admit.

24. Admit.

25. Admit.

26. Admit.

27. Admit.

28. Admit.

29. Admit.

30. Admit.

31. Admit.

## STATEMENT OF FACTS

### Background on Cryptocurrency Investment Fraud

32. AWKO Claimants admit that cryptocurrency investment fraud ("CIF") schemes, often referred to as "pig-butchering," exist, and that each AWKO Claimant was the victim of such a scheme. AWKO Claimants admit that perpetrators of CIF schemes contact potential victims through text messages, dating applications, or other online platforms with the goal of building rapport and

relationships with them, and state that each of those victims met one or more individuals using aliases through social media or a dating application, who claimed professional experience in cryptocurrency investments and continued the conversations on end-to-end communication platforms. AWKO Claimants further state that the investment platforms used against them were not legitimate investment platforms and that the perpetrators obtained their cryptocurrency through fraud. AWKO Claimants specifically deny any allegation that they knowingly or voluntarily relinquished their legal or equitable ownership interests in the stolen assets. AWKO Claimants are otherwise without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph, including the statistics attributed to the FBI's Internet Crime Complaint Center and the location of the criminal syndicates; however, to the extent a further response is required, AWKO Claimants deny those allegations.

33. AWKO Claimants admit that, once trust was established, the scammers recommended virtual currency investment by claiming professional experience in cryptocurrency investments and making misrepresentations about profitable trading strategies. AWKO Claimants further state that the scammers directed them to open accounts on fraudulent trading platforms that, unbeknownst to them, were controlled by the criminal enterprise; that, beginning on the dates stated in their Verified Claims, they transferred cryptocurrency to deposit addresses associated with those platforms; and that the scammers provided falsified account statements representing high returns on their investments, which encouraged further investment, while the cryptocurrency they deposited was routed to virtual currency addresses controlled by the criminals. AWKO Claimants are without information or knowledge sufficient to form a belief as to the remaining allegations in this paragraph, including the methods used against other victims; however, to the extent a further response is required, AWKO Claimants deny those allegations.

34. AWKO Claimants admit that the scammers encouraged them to continue investing. AWKO Claimants further state that, when they sought to withdraw their funds, the platforms

demanded "tax" and/or "fee" payments that had no legitimate basis, consistent with the fake "tax" requirement described in this paragraph; and that after repeated unsuccessful withdrawal attempts AWKO Claimants realized the schemes were fraudulent and were unable to recover their funds. AWKO Claimants further state that at least two AWKO Claimants were also directed to purported cryptocurrency-recovery services that were controlled by the criminal enterprise. ECF No. 11-1 at 9, 219. AWKO Claimants are without information or knowledge sufficient to form a belief as to the remaining allegations in this paragraph, including the conduct of scammers toward other victims; however, to the extent a further response is required, AWKO Claimants deny those allegations.

**Overarching CIF Investigation Involving the Subject Virtual Currency Addresses**

35. AWKO Claimants admit, on information and belief, that Address-1 funded Address-2 through Address-7, as shown in Exhibit 1. AWKO Claimants deny that the Last In, First Out ("LIFO") method described in footnote 4 is the only method which determines which victims own the funds remaining in the Subject Virtual Currency Addresses. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

36. AWKO Claimants admit, on information and belief, that queries of complaint databases identified at least 20 victims who deposited cryptocurrency into addresses provided by fraudulent investment platforms, and that funds from some of those victims were traced into the Subject Virtual Currency Addresses. AWKO Claimants state that the back-traces this paragraph describes were partial, and that, on information and belief, the victims whose stolen cryptocurrency reached the Subject Virtual Currency Addresses include AWKO Claimants. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

37. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

38. AWKO Claimants admit, on information and belief, that the funds in the Subject Virtual Currency Addresses are proceeds of CIF wire fraud schemes and are commingled, and state that those proceeds include cryptocurrency stolen from AWKO Claimants. AWKO Claimants deny that the commingling of their stolen property with other funds makes their interests in it subject to forfeiture, and deny the remaining allegations in this paragraph.

39. AWKO Claimants admit, on information and belief, that Tether blocklisted the Subject Virtual Currency Addresses on or about November 28, 2025. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

**Subject Virtual Currency Address-1**

40. AWKO Claimants admit, on information and belief, that Address-1 received and sent approximately the amounts of USDT alleged in this paragraph and funded Address-2 through Address-7. AWKO Claimants further state that the Verified Claims of several AWKO Claimants identify Address-1 as an address through which their stolen cryptocurrency was laundered. *See, e.g.,* ECF No. 11-1 at 51, 57, 69, 129, 189. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

41. AWKO Claimants admit, on information and belief, that approximately 97.03% of the funds Address-1 received have direct exposure to other known CIF addresses, and state, on information and belief, that the CIF victims whose funds Address-1 received include AWKO

Claimants. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

42. AWKO Claimants admit, on information and belief, that investigators did not back-trace all of the transactions that funded Address-1, and that the funds they did trace passed through un-hosted addresses that were subject-controlled or established at the direction of the subjects. AWKO Claimants state that the Complaint traces only about 675,000 of the approximately 2,808,765 USDT held at Address-1 and does not allege the source of the remainder. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

43. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

44. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

45. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

46. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

47. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a

further response is required, AWKO Claimants deny the allegations in this paragraph.

48. AWKO Claimants admit, on information and belief, that the funds traced in Exhibit 2 passed through intermediary addresses, including 0x2b15...9a27, 0x99cb...b178, and 0x4c4c...ed96, before reaching Address-1, and state that the Verified Claims of AWKO Claimants identify those same addresses as addresses through which their stolen cryptocurrency was laundered. See Compl. at 15 (Ex. 2); ECF No. 11-1 at 57, 189. AWKO Claimants deny that the Defendant Property held at Address-1 is traceable only to Victim MN and the other victims the Complaint identifies. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

49. AWKO Claimants specifically deny any allegation or implication that the Defendant Property held at Address-1 is traceable only to the 76 transactions summarized in Exhibit 3. Exhibit 3 also shows that the attributed transactions fall within a narrow window: all 76 are dated between September 30 and November 27, 2025, and 74 of them in November 2025, although Address-1 received funds from December 2024 onward (Compl. ¶ 40). The Complaint therefore attributes none of the Address-1 balance to any deposit made before September 30, 2025. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

50. AWKO Claimants admit, on information and belief, that approximately $675,810 of the approximately 2,808,765 USDT held at Address-1 was traced to the 76 known and suspected victim transactions. The AWKO Claimants state that the Complaint does not attribute the remaining approximately 2,132,955 USDT to any identified victim. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this

paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

**Subject Virtual Currency Address-2**

51. AWKO Claimants admit, on information and belief, that approximately 6,000,000 of the approximately 6,001,000 USDT that Address-2 received came from Address-1. The AWKO Claimants state that the Verified Claims of AWKO Claimants identify Address-2 as an address through which their stolen cryptocurrency was laundered. *See* ECF No. 11-1 at 129, 189. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

52. AWKO Claimants deny that all of the approximately 52,671 USDT held at Address-2 is traceable to Victim JH alone. As paragraph 51 alleges, nearly all of the USDT that Address-2 received came from Address-1, the consolidation address, and the Complaint attributes the remaining balance to a single transaction by applying the Last In, First Out method (Compl. n.4), an accounting convention. AWKO Claimants are without information or knowledge sufficient to form a belief as to the remaining allegations in this paragraph; however, to the extent a further response is required, AWKO Claimants deny those allegations.

53. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

**Subject Virtual Currency Address-3**

54. AWKO Claimants admit, on information and belief, that approximately 3,000,000 of the USDT that Address-3 received came from Address-1. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this

paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

55. AWKO Claimants admit, on information and belief, that investigators did not back-trace all of the transactions that funded Address-3. The AWKO Claimants state that the Verified Claims of AWKO Claimants identify Address-3 as an address through which stolen cryptocurrency was laundered. *See* ECF No. 11-1 at 51, 69. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

56. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

57. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

58. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

59. AWKO Claimants admit that at least one AWKO Claimant was defrauded through a platform operating under the name "Peaky Digital." ECF No. 11-1 at 195. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

60. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a

further response is required, AWKO Claimants deny the allegations in this paragraph.

61. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

62. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

63. AWKO Claimants admit, on information and belief, that the funds traced in Exhibit 6 passed through intermediary addresses 0x0e79...4988, 0x3ea2...4006, 0x3191...2011, 0x5a04...c06a, 0xe016...6930, and 0x2abb...2709, and then through Address-1, before reaching Address-3, and that those intermediary addresses were used by the perpetrators to launder fraud proceeds. AWKO Claimants state, on information and belief, that cryptocurrency stolen from AWKO Claimants was laundered through the same addresses, which their Verified Claims identify. *See* Compl. at 24 (Ex. 6); ECF No. 11-1 at 27, 87, 123, 135, 207, 231. AWKO Claimants further state that Exhibit 6 shows Victim KP's funds being combined with other funds along the traced path: KP's three deposits totaled 17,276 USDC, but the transfers along that path grew from 22,276 USDC to 1,000,000 USDT, which could occur only if funds from other sources were added along the way. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

64. AWKO Claimants specifically deny any allegation or implication that the Defendant Property held at Address-3 is traceable only to the 14 transactions summarized in Exhibit 7. Exhibit 7 also shows that all 14 attributed transactions are dated between February 18 and February 21, 2025, although Address-3 received approximately 4,499,999 USDT while in use from February 2025 to May 2026 (Compl. ¶ 54). AWKO Claimants are without information or knowledge sufficient to form

a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

65. AWKO Claimants admit, on information and belief, that approximately $161,194 of the approximately 249,799 USDT held at Address-3 was traced to the 14 known and suspected victim transactions. The AWKO Claimants state that the Complaint does not attribute the remaining approximately 88,605 USDT to any identified victim. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

**Subject Virtual Currency Address-4**

66. AWKO Claimants admit, on information and belief, that all of the USDT that Address-4 received came from Address-1. AWKO Claimants state that this paragraph alleges that Address-4 was in use through December 2026, a date after the Complaint was filed. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

67. AWKO Claimants admit, on information and belief, that investigators did not back-trace all of the transactions that funded Address-4, and state that the Verified Claim of at least one AWKO Claimant identifies Address-4 as an address through which stolen cryptocurrency was laundered. *See* ECF No. 11-1 at 57. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

68. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

69. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

70. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

71. AWKO Claimants admit, on information and belief, that the funds traced in Exhibit 10 passed through intermediary addresses, including 0xe57b...11fc, 0x99cb...b178, and 0x4c4c...ed96, and then through Address-1, before reaching Address-4, and state that the Verified Claims of AWKO Claimants identify those same intermediary addresses. See Compl. at 29 (Ex. 10); ECF No. 11-1 at 57, 189. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

72. AWKO Claimants specifically deny any allegation or implication that the Defendant Property held at Address-4 is traceable only to the 24 transactions summarized in Exhibit 11. Exhibit 11 also attributes approximately $61,008.66 of the Defendant Property at Address-4 to three Crypto.com transactions dated July 12 and 14, 2024, before Address-1 (December 2024) or Address-4 (September 2025) was in use. Compl. ¶¶ 40, 66. The Complaint thus traces the Defendant Property to deposits made well before the Subject Virtual Currency Addresses' alleged periods of use. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

73. AWKO Claimants admit, on information and belief, that approximately $146,344 of the approximately 490,000 USDT held at Address-4 was traced to the 24 known and suspected victim transactions, and state that the Complaint does not attribute the remaining approximately 343,656 USDT to any identified victim. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

**Subject Virtual Currency Address-5**

74. AWKO Claimants admit, on information and belief, that approximately 2,000,000 USDT that Address-5 received came from Address-1 and remains there. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

75. AWKO Claimants admit, on information and belief, that approximately 1,000,000 USDT held at Address-5 was traced to a single transaction from Binance, and state that this paragraph does not allege the source of the remaining approximately 1,000,000 USDT held at Address-5. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

76. AWKO Claimants admit, on information and belief, that the transaction from Binance described in this paragraph was funded by proceeds originating from unknown CIF scam victims, and state, on information and belief, that those unknown victims include AWKO Claimants. AWKO Claimants further admit, on information and belief, that money launderers do not usually commingle legitimate funds with illegitimate funds. AWKO Claimants are without information or knowledge

sufficient to form a belief as to the remaining allegations in this paragraph; however, to the extent a further response is required, AWKO Claimants deny those allegations.

77. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

78. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

79. AWKO Claimants further state that this paragraph traces funds now held at Address-5 to deposits made between May 2021 and April 2022, years before Address-5 was first used in February 2025 (Compl. ¶ 74), and that the Complaint thus traces the Defendant Property to deposits made long before the Subject Virtual Currency Addresses' alleged periods of use. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

80. AWKO Claimants admit, on information and belief, that approximately 46,329 of the 2,000,000.02 USDT held at Address-5 was traced to a transaction from Coinbase. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

81. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

82. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a

further response is required, AWKO Claimants deny the allegations in this paragraph.

**Subject Virtual Currency Address-6**

83. AWKO Claimants admit, on information and belief, that approximately 2,000,000 USDT that Address-6 received came from Address-1. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

84. AWKO Claimants admit, on information and belief, that investigators did not back-trace all of the transactions that funded Address-6. The AWKO Claimants state that the Verified Claim of at least one AWKO Claimant identifies Address-6 as an address through which stolen cryptocurrency was laundered. *See* ECF No. 11-1 at 189. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

85. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

86. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

87. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

88. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a

further response is required, AWKO Claimants deny the allegations in this paragraph.

89. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

90. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

91. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

92. AWKO Claimants specifically deny any allegation or implication that the Defendant Property held at Address-6 is traceable only to the 43 transactions summarized in Exhibit 17. Exhibit 17 also shows that all 43 attributed transactions are dated between October 27 and November 22, 2025, although the 2,000,000 USDT held at Address-6 came from Address-1, which received funds from December 2024 onward (Compl. ¶¶ 40, 83–84). AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

93. AWKO Claimants admit, on information and belief, that approximately $377,016 of the approximately 2,000,000 USDT held at Address-6 was traced to the 43 known and suspected victim transactions. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

**Subject Virtual Currency Address-7**

94. AWKO Claimants admit, on information and belief, that Address-7 received approximately 8,000,000 USDT from Address-1 and approximately 2,500,000 USDT from Address-4, which was itself funded by Address-1. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

95. AWKO Claimants admit, on information and belief, that investigators did not back-trace all of the transactions that funded Address-7. The AWKO Claimants state that the Verified Claims of AWKO Claimants identify Address-7 as an address through which stolen cryptocurrency was laundered. *See* ECF No. 11-1 at 57, 189. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

96. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

97. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

98. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

99. AWKO Claimants state that this paragraph alleges an interview in June 2025, before the events alleged in paragraph 101 (around September 2025). AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this

paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

100. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

101. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

102. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

103. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

104. AWKO Claimants specifically deny any allegation or implication that the Defendant Property held at Address-7 is traceable only to the 55 transactions summarized in Exhibit 22. Exhibit 22 also shows that all 55 attributed transactions are dated between October 10 and November 12, 2025, although Address-7 received approximately 10,500,000 USDT from Address-1 and Address-4 (Compl. ¶ 94). AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

105. AWKO Claimants admit, on information and belief, that approximately $430,860 of the approximately 4,500,000 USDT held at Address-7 was traced to the 55 known and suspected victim transactions. AWKO Claimants are without information or knowledge sufficient to form a

belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

**Defendant Property's Involvement in Money Laundering Offenses**

106. AWKO Claimants admit, on information and belief, that the victims identified in this investigation, along with suspected and unidentified victims, were defrauded by means of materially false and fraudulent pretenses, representations, and promises conveyed through wire communications, and state that AWKO Claimants are among those victims. The remainder of this paragraph states legal conclusions to which no response is required and, thus, declines to respond.

107. AWKO Claimants decline to admit or deny this paragraph as it makes a legal assertion, and the law speaks for itself.

108. AWKO Claimants admit, on information and belief, that the stolen funds were moved through numerous intermediary addresses that received, commingled, and consolidated the funds of confirmed and suspected victims, including funds stolen from AWKO Claimants, to obscure their source. AWKO Claimants state that this commingling undercuts any attribution of the Defendant Property solely to the victims the Complaint identifies. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

109. AWKO Claimants admit, on information and belief, that victims' funds were first sent to subject-controlled deposit addresses provided by the fraudulent platforms, and state that AWKO Claimants were directed to deposit their cryptocurrency to such addresses. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

110. AWKO Claimants admit, on information and belief, that funds were rapidly sent through multiple addresses before reaching a consolidation wallet. AWKO Claimants specifically admit the allegation that funds resting in a consolidation wallet give criminals time to commingle them with other illicit gains, and state that such commingling undercuts any attribution of the Defendant Property solely to the victims the Complaint identifies. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

111. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

112. AWKO Claimants admit, on information and belief, that the victim funds in this case, including the cryptocurrency stolen from AWKO Claimants, were converted into USDT. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

113. AWKO Claimants admit, on information and belief, that the transfers described in the Complaint served no legitimate economic purpose and were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds of wire fraud. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

114. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny the allegations in this paragraph.

115. AWKO Claimants admit, on information and belief, that victims' funds from multiple deposit addresses were funneled into Address-1 as a common consolidation address before being sent to the other Subject Virtual Currency Addresses, so that the Complaint traces the entire Defendant Property through Address-1. AWKO Claimants state, on information and belief, that cryptocurrency stolen from AWKO Claimants was among the victims' funds funneled into Address-1. AWKO Claimants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint; however, to the extent a further response is required, AWKO Claimants deny those allegations.

116. AWKO Claimants admit, on information and belief, that the funds deposited into the Subject Virtual Currency Addresses, including the funds the Complaint does not trace to identified victims, consist of the proceeds of cryptocurrency investment fraud schemes or similar scams. AWKO Claimants state that those proceeds remain the property of the victims from whom they were stolen, including AWKO Claimants, and that the Complaint traces less than $1.9 million of the approximately 12.08 million USDT Defendant Property to any identified or suspected victim transaction. AWKO Claimants deny that the perpetrators' commingling of stolen funds makes the victims' interests subject to forfeiture, and deny the remaining allegations in this paragraph.

**COUNT ONE – FORFEITURE OF DEFENDANT PROPERTY**
**(18 U.S.C. § 981(a)(1)(C))**

117. AWKO Claimants decline to admit or deny this paragraph as it makes a legal assertion, and the law speaks for itself.

118. This paragraph states legal conclusions to which no response is required. To the extent a response is required, AWKO Claimants deny that the portions of the Defendant Property traceable to cryptocurrency stolen from them are subject to forfeiture, because their interests in that property are the interests of innocent owners under 18 U.S.C. § 983(d).

**COUNT TWO – FORFEITURE OF DEFENDANT PROPERTY**
**(18 U.S.C. § 981(a)(1)(A))**

119. AWKO Claimants decline to admit or deny this paragraph as it makes a legal assertion, and the law speaks for itself.

120. This paragraph states legal conclusions to which no response is required. To the extent a response is required, AWKO Claimants deny that the portions of the Defendant Property traceable to cryptocurrency stolen from them are subject to forfeiture, because their interests in that property are the interests of innocent owners under 18 U.S.C. § 983(d).

## AFFIRMATIVE DEFENSES

1. Each AWKO Claimant is an innocent owner under 18 U.S.C. § 983(d). Each AWKO Claimant's ownership interest in the cryptocurrency stolen from that AWKO Claimant existed at the time the illegal conduct giving rise to forfeiture took place, and no AWKO Claimant knew of that conduct. 18 U.S.C. § 983(d)(2)(A)(i). AWKO Claimants did not consent to the transfer of their cryptocurrency to the operators of the fraud schemes, and each holds an ownership interest in the specific property sought to be forfeited that is traceable to that cryptocurrency. See 18 U.S.C. § 983(d)(6)(A). No AWKO Claimant is a person with only a general unsecured interest in, or claim against, the property or estate of the perpetrators. See 18 U.S.C. § 983(d)(6)(B)(i). Their interests in the Defendant Property therefore may not be forfeited. 18 U.S.C. § 983(d)(1).

2. AWKO Claimants committed no offense, and forfeiting their property to punish the conduct of those who stole it would violate the Excessive Fines Clause of the Eighth Amendment.

3. AWKO Claimants hold legal and equitable title to the cryptocurrency stolen from them and to property traceable to it. The persons who obtained that cryptocurrency by fraud acquired no interest in it superior to AWKO Claimants' interests, and the forfeiture of their interests cannot extinguish AWKO Claimants' interests.

4. The Defendant Property consists of the commingled funds of many victims that, as the Complaint alleges, passed through Address-1, a consolidation address, before reaching the other Subject Virtual Currency Addresses. Compl. ¶¶ 35, 115. The Complaint traces less than $1.9 million of the approximately 12.08 million USDT Defendant Property to identified or suspected victim transactions, using partial back-traces and the Last In, First Out method (Compl. n.4), and alleges that the remainder likely consists of the proceeds of the same or similar schemes. Compl. ¶ 116. Any determination of the interests in the Defendant Property, and any forfeiture, release, or distribution of it, must account for AWKO Claimants' traced interests under a method that considers all victim funds that passed through Address-1 and the intermediary addresses, and may not treat the funds the Complaint does not trace as belonging to no victim.

5. AWKO Claimants reserve the right to plead additional defenses that become known or available during discovery, and to withdraw any defense that discovery shows to be unsupported.

6. Nothing in this Answer waives AWKO Claimants' right to seek remission or restoration of forfeited property as victims under 28 C.F.R. Part 9, which their Verified Claims request in the alternative.

WHEREFORE, AWKO Claimants respectfully request that the Court (a) deny forfeiture of the Defendant Property to the extent of AWKO Claimants' interests; (b) adjudge that each AWKO Claimant holds legal and equitable ownership interests in the portions of the Defendant Property traceable to the cryptocurrency stolen from that AWKO Claimant; (c) order that those portions be released to AWKO Claimants through undersigned counsel; (d) in the alternative, order that any portion of the Defendant Property that is forfeited be made available to compensate victims of the schemes, including AWKO Claimants; and (e) grant such further relief as the Court deems just and proper.

Date: November 25, 2026 Respectfully Submitted,

By: *<u>/s/ Christopher Klotz</u>*
DC Bar No. 439409
**AYLSTOCK, WITKIN,**
**KREIS & OVERHOLTZ, PLC**
Email: cklotz@awkolaw.com
17 East Main Street, Suite 200
Pensacola, FL 32502
Phone: (850) 202-1010
Facsimile: (850) 916-7449

-and-

*<u>/s/ Kimberly D. Tanner</u>*
Kimberly Tanner (Admission application pending)
**AYLSTOCK, WITKIN,**
**KREIS & OVERHOLTZ, PLC**
Email: ktanner@awkolaw.com
17 East Main Street, Suite 200
Pensacola, FL 32502
Phone: (850) 202-1010
Facsimile: (850) 916-7449

*Attorneys for AWKO Claimants*

## CERTIFICATE OF SERVICE

I, Christopher Klotz, hereby certify that the foregoing document, filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 25, 2026.

By: *<u>/s/ Christopher Klotz</u>*

DC Bar No. 439409
**AYLSTOCK, WITKIN,**
**KREIS & OVERHOLTZ, PLC**
Email: cklotz@awkolaw.com
17 East Main Street, Suite 200
Pensacola, FL 32502
Phone: (850) 202-1010
Facsimile: (850) 916-7449

*Attorney for AWKO Claimants*